OVERTON, J.
 

 The plaintiffs in this case are the children and sole heirs of Effie L. Smith, deceased, who was the wife of William T. Smith, the father of plaintiffs. They have brought this suit to recover an undivided. half interest in a certain described tract of land situated in the parish of Vernon. The right of plaintiffs to recover the one-half interest, claimed by them, depends npon whether or not the property, out of which this litigation grows, belonged to the community of acquits and gains that existed between their mother and father. If it did, plaintiffs are entitled to recover. If it did not, then they should be cast in the suit.
 

 The property in which plaintiffs claim an undivided half interest was entered by their father, William T. Smith, on March 3, 1899, as a homestead, under section 2289 of the Revised Statutes of the United. States (U. S. Comp. St. § 4530), and other laws of Congress, pertaining to such entries. On the date of the entry, Smith and the mother of plaintiffs were living together in matrimony, under the régime of the community of aequSts and gains. After the entry had been made, and during the existence of the community, Smith resided on the land and cultivated it, and did so for a period of not less than five years after the making of the entry. After he had resided on and cultivated the land for the period mentioned, he, on September 3, 1904, made final proof of his entry, before J. J. Hicks, clerk of court for the parish of Vemon. The proof made was received and filed by the land office at New Orleans on September 7, 1904. On January 12, 1905, the final certificate for the property was issued by the receiver, and on June 28 of the same year a patent was issued to Smith for the land. On September 23, 1904, which was after Smith had made final proof of his entry, and after the proof had been received and filed at the land office, but before the final receipt and the patent had issued, the community of acquets and gains, which existed between Smith and his wife, was dissolved by the death of the wife. From the time Smith began his occupancy and cultivation of the land, up to her death, Mrs. Smith and the rest of the family lived on the property with him. Smith, after the death of his wife, sold the land — the entire tract — to the Nona Mills Company, Ltd., one of the defendants herein. The Nona Mills Company, Ltd., after its purchase, sold the land to the Anacoco Lumber Co., Inc., the remaining defendant in this case.
 

 The contention of plaintiffs is that the title to the land vested in Smith when he made final proof of his entry, and, since at the time he made such proof the community of acquets and gains, which existed between him and his wife, had not been dissolved, that the land, under the laws of this state, fell into the community. On the other hand, the contention of defendants is that the title to the land did not vest in Smith until the issuance of the patent, and that, since the patent did not issue until after the dissolution Qf the community by the death of Mrs. Smith, the land did not fall into the community, but that the title to it vested in Smith as his separate property, and hence that, when he sold, he had the right, as the owner of the whole, to sell the entire tract.
 

 Opinion.
 

 Section 2291 of the Revised Statutes of the United States (U. S. Comp. St. § 4532) relates to the making of final proof, in respect to homesteads and to the effect of such proof.
 

 The section reads as follows;
 

 “No certificate, however, shall be given, or patent issued therefor, until the expiration of five years from the date of such entry; and
 
 *469
 
 if at the expiration of such time, or at any time within two years thereafter, the person making such entry; or if he be dead, his widow; or in case of her death, his heirs or devisee; or in case of a widow making such entry, her heirs or devisee, in case of her death, proves by two credible witnesses that he, she, or they have- resided upon or cultivated the same for a term of five years immediately succeeding the time of filing the affidavit, and makes affidavit that no part of such land has been alienated, except as provided in section twenty-two hundred and eighty-eight, and that he, she, or they will bear true allegiance to the Government of the United States; then, in such case, he, she, or they, if at that time citizens of the United States, shall be entitled to a patent, as in other cases provided by law.”
 

 From the foregoing section of the Revised Statutes it seems clear that if'a person, who desires to enter a part of the public domain as a homestead, enters it, resides upon, or cultivates it during the period required, proves by two credible witnesses that he has resided upon or cultivated it for such time, makes affidavit that no part of it has been alienated, except as provided by the section named, and makes oath that he will bear true allegiance to the United States, and is at the time a citizen of this country, then he is entitled to a patent. It would seem equally clear that the title vests in the entryman, upon his complying with the conditions of the statute, and upon his making final proof showing such compliance; for, when he has done these things, he has done all that the law requires of him. What remains to be done is to be done by the government. It is true that it is only the equitable title that vests in him then, and that the legal title still remains in the government, but it is also true that the government holds the legal title merely in trust for the entry-man.
 

 The question submitted to us, therefore, resolves itself into this: Does the vesting of the equitable title to a homestead in the entryman, by the making of final proof, before the dissolution of the community, make the homestead community - property, when, as in the case at bar, the entry was made and the homestead occupied and cultivated by the entryman during the existence of the community? We think that it does.
 

 In the case of Brown v. Fry, 52 La. Ann. 58, 26 So. 748, such was the effect of the ruling. In that case, the entryman, who was married and living in community with his wife, entered a homestead under the laws of the United States. After having resided on the homestead with his family, and after having cultivated it for the time required by law, he made final proof. Before the issuance of the final receipt and the patent, his wife died. The question arose as to whether the property belonged to the community which had existed between the entryman and his wife, and this court held that it did, and in so ruling said:
 

 “It only remained for the government to issue the final receipt. No power — not even the government itself — could, in law, divest the community of a right to a homestead which it had well earned, although a final receipt had not been issued at the date that the community was dissolved by the death of the wife.”
 

 In the case of Wadkins v. Producers’ Oil Co., 130 La. 308, 57 So. 937, it appears that Wadkins settled upon a tract of land, forming a part of the public domain, with the intention of entering the tract as a homestead. After settling upon it he married, and later filed his application to enter the land under the homestead laws of the United States. Before he had occupied it for five years his wife died. He continued to occupy the land after her death, and at the expiration of the required period made final proof, and obtained a patent. Later he sold the property. Some time after the sale, the only surviving child of the marriage, a daughter, brought suit to recover a half interest in the property, on the ground that the land, having been entered during the existence of the community, and occupied a part of the time dur
 
 *471
 
 ing its existence, was community property, and that she, the daughter, as the heir of her mother, was entitled to her mother’s half of it. in this court, plaintiff’s demand was rejected. The case was taken to the Supreme Court of the United States, and the decree of this court was there affirmed.
 

 While the facts of the ease are different from those in the case at bar, at least, in two important respects, yet the opinion rendered by the Supreme Court of the United States contains expressions which, in our view, show when the rights of the community attach. The court, in its opinion, said:
 

 “There can be no doubt that Wadkins’ inchoate right was initiated by his settlement, and that, as between Mm and any intervening claimant, his perfected right evidenced by the patent related back to the time of his settlement (Shepley v. Cowan, 91 U. S. 330, 338, 23 L. Ed. 424, 427; Weyerhaeuser v. Hoyt, 219 U. S. 380, 388-390, 55 L. Ed. 258, 261-263, 31 Sup. Ct. Rep. 300); but he did not acquire any vested interest in the land until he had fully complied with the provisions of the homestead law, and submitted proof thereof at the local office. Prior to that time his right was essentially inchoate and exclusively within the operation of the laws of the United States, and those laws, as we have seen, fully dealt with the subject of who should be the beneficiary of a compliance with them, thereby excluding state laws from that field. This is a manifest deduction from McCune v. Essig [199 U. S. 382, 26 S. Ct. 78, 50 L. Ed. 237]. * * * ” Wadkins v. Producers’ Oil Co., 227 U. S. 368, 33 S. Ct. 380, 57 L. Ed. 551.
 

 The foregoing excerpt conveys the impression that the homesteader has a vested interest in the land when he has complied fully with the provisions of-the homestead law, and has submitted proof thereof at the local office, and that, until then, he has no such interest.
 

 Our conclusion is that, when it appears that the entryman has done all that is required of him under the homestead law, including the submission of final proof to the government, he then has a vested interest in the land, and if the community has not been dissolved, the interest, which then vests, falls into it, and, as that interest is a community interest, the land, upon the issuance of the patent, will be deemed community property. In this view we think we are ■ supported by the case of Brown v. Pry, cited above, and by the views expressed by the Supreme Court of the United States in the Wadkins Case. In so far as concerns the case of Crochet v. McCamant, 116 La. 1, 40 So. 474, 114 Am. St. Rep. 538, cited by plaintiffs, we think the ruling therein erroneous, and therefore we have not relied upon the ease in reaching a conclusion. We think that the ruling made there is erroneous, because it is to the effect that title vests in the community, after the expiration of the five years’ occupation required by law, although final proof has not been made, when under the statute the making of such proof is one of the conditions of the grant, and must be made within a specified time to entitle one to a patent.
 

 Defendants, however, contend that the entryman, in the case at bar, did not do all that was required of him, before.the dissolution of the community, to acquire title. They contend that certain fees and charges, the payment of which, they urge, was necessary for that purpose, were not paid until after the dissolution of the community, and hence they contend that no interest in the land vested in the entryman prior to the dissolution of the community.
 

 , The fees and charges referred to are those required to be paid on making final proof. This proof, as will be recalled, was made before the clerk of court of Vernon parish, the parish in which the land lies. Section 2294 of the Revised Statutes of the United States (as amended hy the Act of March 11, 1902, 32 Stat. L. 63 [U. S. Comp. St. § 4546]) authorizes the proof, affidavit, and oath to be taken and made before the clerk of any court
 
 *473
 
 of record in winch, the land is situated, and provides that when so made the proof, affidavit, and oath shall have the same effect as if made before the register and the receiver, when transmitted to them with the fees and commissions allowed and required by law. In the case at bar, on the final proof that was transmitted, which is indorsed as having been received and filed on September 7, 1904, appears a notation of the amount of these fees and charges. In the receiver’s final receipt, which bears date January 12, 1905, and which was issued after the dissolution of the community, the receipt of these fees and charges is acknowledged.
 

 We are not of the opinion that it follows that, because the final receipt was not issued until January 12,1905, the money was not received until then. To the contrary, we think that, in the absence of clearer proof, we should presume that the money was remitted when the final proof was sent, as required by law.
 

 As all of the conditions required of an entryman to acquire title to a homestead were complied with in this case, before the dissolution of the community, we conclude that plaintiffs should recover.
 

 For the reasons assigned it is ordered, adjudged, and decreed that the judgment appealed from be annulled and set aside, and there now be judgment in favor of plaintiffs and against defendants, recognizing plaintiffs as the owners of an undivided half interest in said land, and ordering said acts from said William T. Smith to the Nona Mills Company, Ltd., and from said company to the Anacoeo Lumber Co., Inc., canceled, in so far as they effect said one-half undivided interest, recovered herein by plaintiffs. And it is further ordered that appellees pay the costs of both courts.
 

 O’NIELL, C. dissents.